946 F.2d 457
 138 L.R.R.M. (BNA) 2619, 120 Lab.Cas. P 10,952
 Lynn MARTIN, Secretary of Labor, United States Department of
Labor, Plaintiff-Appellant,
v.
LOCAL 480, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN, AND HELPERS OF AMERICA,
AFL-CIO, Defendant-Appellee.
 No. 91-5102.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 9, 1991.
Decided Oct. 11, 1991.
 
 Michael L. Roden, Asst. U.S. Atty., Nashville, Tenn., Helene Boetticher, Frederick Bowen (argued and briefed), U.S. Dept. of Labor, Washington, D.C., Bobbye D. Spears, Regional Sol., U.S. Dept. of Labor, Office of the Sol., Nashville, Tenn., William H. Berger, Office of the Sol. U.S. Dept. of Labor, Atlanta, Ga., Samuel F. Wright, Office of the Sol., LML U.S. Dept. of Labor, Robert P. Davis, Mayer, Brown & Platt, Washington, D.C., for plaintiff-appellant.
 Cecil D. Branstetter, James G. Stranch, III (argued and briefed), Branstetter, Kilgore, Stranch & Jennings, Nashville, for defendant-appellee.
 Before GUY, Circuit Judge, PECK, Senior Circuit Judge, and SILER, Chief District Judge.*
 RALPH B. GUY, JR., Circuit Judge.
 
 
 1
 The Secretary of Labor appeals from a summary judgment granted in favor of defendant, Local 480 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, AFL-CIO (Local 480 or union), in the Secretary's action brought under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA or Act), 29 U.S.C. § 401 et seq. The Secretary sought to set aside Local 480's 1989 election of officers on the basis that employer funds had been used during the election to promote the candidacy of the incumbent president, in violation of 29 U.S.C. § 481(g). Finding that union members had not invoked available union remedies before filing their complaint with the Secretary, as required by 29 U.S.C. § 482(a)(2), the district court held that the Secretary had no authority to bring the action and, therefore, dismissed the suit.
 
 
 2
 For the reasons set forth below, we reverse and remand.
 
 I.
 
 3
 Local 480 conducted its triennial election of union officers from November 3, 1989, to November 5, 1989. The voting ended at 5:00 p.m. on November 5, and the subsequent tally of ballots lasted approximately 45 minutes.
 
 
 4
 The Secretary and Local 480 agree that the union's elections are governed by the constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, AFL-CIO (Teamsters). Article XXII, Section 5(b) of the Teamsters' constitution provides as follows:
 
 
 5
 In the event there shall be any protest or charge by any member concerning the conduct of the election after the election has been held, such protest or charge shall be made in writing by such member within seventy-two (72) hours setting forth the exact nature and specifications of the protest and his claim as to how it has affected the outcome of the election. Such protest or charge shall be made to the Secretary-Treasurer of the Joint Council with which the Local Union is affiliated and the protest or charge shall be referred to the Joint Council Executive Board for disposition.... The decision of the Joint Council Executive Board shall be appealable to the General Executive Board for final decision ... in accordance with the provisions of Article XIX of the International Constitution....
 
 
 6
 Therefore, the protest of an election must be made in writing, within 72 hours of the election, to the Secretary-Treasurer of the Joint Council, and with information concerning the exact nature and specifications of the protest and how the outcome of the election was affected.
 
 
 7
 On November 8, David Bowden and James Mathis, two unsuccessful candidates for the office of the president of Local 480, along with two other union members, Rodney Patterson and Jerry Lovin, protested the election by sending a mailgram via Western Union to the Secretary-Treasurer of the Joint Council. The union members complained, inter alia, that an employer funded and otherwise promoted the candidacy of the incumbent president in direct violation of the Labor-Management Reporting and Disclosure Act.
 
 
 8
 The parties agree that the Secretary-Treasurer did not receive the mailgram until November 10, 1989, five days after the election. The Secretary-Treasurer of the Joint Council, Luther Watson, also served as the president of Local 480, as he was the incumbent re-elected in the contested election. After setting the protest for hearing, Watson recused himself from participating in the matter as a member of the Joint Council. The Joint Council conducted a hearing on the protest on December 12, 1989, but did not issue its decision until February 5, 1990, wherein it dismissed the protest on the ground that the Secretary-Treasurer had not received the protest within 72 hours of the election. Alternatively, the Joint Council decided that, even if timely, the election protest was not valid due to the protestors' failure to specify sufficiently the acts complained of and how those acts affected the outcome of the election.
 
 
 9
 Two of the complainants, Bowden and Lovin, received notice of the Joint Council's decision on February 6, 1990. Article XIX, Section 2(a) of the Teamsters' constitution, states that "[a]ll manner of appeals shall be taken within fifteen (15) calendar days from the date the decision is placed in the mail or otherwise transmitted to the interested parties." On February 23, 1989, seventeen days from the day they received notice of the Joint Council's decision, Bowden and Lovin mailed a letter to the General Executive Board appealing the decision of the Joint Council. Thereafter, on February 28, Bowden filed a complaint with the Secretary of Labor challenging the election; Lovin filed a complaint with the Secretary on March 1, 1990. On March 8, 1990, Teamsters' General President, William J. McCarthy, sent Bowden and Lovin a letter stating that "it would be inappropriate for the General Executive Board to consider your appeal" because the appeal was untimely filed.
 
 
 10
 The Secretary investigated the complaints of Bowden and Lovin, and, having found probable cause to believe that employer funds had been used to promote the candidacy of Local 480's incumbent president during the November 3-5 election, the Secretary filed the underlying action in district court alleging a violation of 29 U.S.C. § 481(g). The district court subsequently granted summary judgment in favor of Local 480, finding that the Secretary had no authority to file her complaint against the union because the complainants had failed to timely invoke internal union remedies as required by section 402(a) of the LMRDA, 29 U.S.C. § 482(a). That section of the Act reads as follows:
 
 
 11
 A member of a labor organization--
 
 
 12
 (1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or
 
 
 13
 (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,
 
 
 14
 may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481....
 
 
 15
 29 U.S.C. § 482(a).
 
 
 16
 The district court noted that, under this statutory provision, a union member need not exhaust the available union remedies if, after invoking the available remedies, the union member has not received a final decision within three months of beginning the internal process for relief. However, the district court determined that, because the complainants failed to timely appeal the Joint Council's decision to the Teamsters' General Executive Board, the complainants had not invoked the union remedies available under the Teamsters' constitution. The district court reasoned as follows:
 
 
 17
 Here, the complainants did not immediately appeal the decision of the Joint Council. Their delay in appealing pushed their complaint over the three-month threshold and completely ignored the Constitution's requirement that an appeal of a decision by a Joint Council be made within fifteen days. Permitting the three-month deadline to slide by without even trying to comply with the internal procedures for appeal--or offering an explanation as to why a delay occurred--is not consistent with the purposes behind [29 U.S.C. § 482].
 
 
 18
 The district court did not address the underlying allegation that employer funds were used in the 1989 election, nor did the district court determine whether the complainants' initial protest to the Joint Council met the 72-hour requirement of the Teamsters' constitution.
 
 
 19
 On appeal, the Secretary argues that, under section 402(a)(2) of the LMRDA, a union member who has protested a union election and who has not received a final decision from the union after three months, may file a complaint with the Secretary any time during the month after the three-month statutory period has elapsed. The Secretary argues that a member is not required to continue to invoke his or her internal remedies once the three-month statutory period has elapsed. Thus, the Secretary maintains that it is irrelevant that the complainants missed the deadline for appealing the Joint Council decision to the General Executive Board, because that deadline fell beyond the three-month statutory period.
 
 II.
 
 20
 The Secretary cannot make an investigation or file a civil suit against a union until an aggrieved union member has filed a valid complaint with the Secretary, and the complaint is not valid unless the complaining union member has exhausted or invoked union remedies as required under section 402(a) of the Act. 29 U.S.C. § 482(a) and (b); see Brock v. Local 369, Int'l Union of Operating Eng'rs, 790 F.2d 508, 509 (6th Cir.1986); Hodgson v. District 6, United Mine Workers of America, 474 F.2d 940, 944 (6th Cir.1973). The question presented here is whether the complaining union members invoked their available union remedies without obtaining a final decision within three calendar months and thus came within the second alternative of 29 U.S.C. § 482(a).
 
 
 21
 The purpose of the LMRDA's exhaustion requirement, and the manner in which the requirement is to be construed, has been described as follows:
 
 
 22
 Statutory construction should generally be informed both by reference to the underlying policies of Congress and by common sense. Title IV, the statute to be construed, represents a balance between the public interest in fair and democratic elections, on the one hand, and the importance of minimizing government encroachment upon union autonomy, on the other. As one aspect of this equilibrium, Congress has determined that before the Secretary may intrude upon union election procedures, his authority must be called forth by a union member who has either exhausted his union remedies or invoked them without satisfaction for three months.
 
 
 23
 Donovan v. Local 3122, Communications Workers of America, 740 F.2d 860, 861 (11th Cir.1984) (quoting Brennan v. Local 122, Amalgamated Clothing, 564 F.2d 657, 660 (3d Cir.1977)).
 
 
 24
 This court has recognized that the exhaustion requirement must be applied "with due regard for a balance between the rights of industrial union members and the real need of elected union officials to get on with the business of carrying out their duties without the deliberative drag of tardily asserted challenges to their authority." Brock, 790 F.2d at 512. Nevertheless, as the alternative provisions of section 402 indicate, government intervention into union affairs is minimized only to the degree that unions take advantage of the fact that the Act gives them "the first opportunity to put their own house in order." Id. As the Third Circuit has explained:
 
 
 25
 The two alternative provisions of § 402(a) illustrate the distinction between requirements of exhaustion and invocation of remedies. The first alternative is one of direct exhaustion of the remedies available under the union's constitution and by-laws. The second alternative, however, requires only the invocation of available remedies and authorizes resort to the Secretary of Labor, regardless of exhaustion, if the remedies invoked have not yielded a final decision within three calendar months. Both requirements are intended to afford the union an opportunity to hear the complaint of its member and to redress his grievance before he may resort to governmental intervention.
 
 
 26
 Shultz v. Local 1291, Int'l Longshoremen's Ass'n, 429 F.2d 592, 595-96 (3rd Cir.1970).
 
 
 27
 We believe that, in the case at bar, the union was afforded the opportunity intended by the Act to hear and redress the complaining members' charges, but it failed to render a final decision within three months after the complainants initially invoked the union's internal grievance procedures. Consequently, the union members' complaints, filed with the Secretary within one month after the three-month deadline passed, complied with the prerequisites of section 402(a)(2) of the LMRDA. We note, however, that we resolve this case without intending to enunciate principles for controlling all future cases that involve the question of exhaustion of remedies. Rather, our analysis is fact specific and relies particularly on the fact that the union's initial delay in responding to the protest precipitated the problem we are now asked to resolve.
 
 
 28
 We find erroneous the district court's conclusion that the complainants' delay in appealing the Joint Council's decision "pushed their complaint over the three-month threshold." The complainants received the Joint Council's decision on February 6, 1990, two days before the three-month period was due to expire (if the three-month period is measured from the date the complainants sent their mailgram protest) or four days before the end of three months (if the statutory period is measured from the date that the Secretary-Treasurer of the Joint Council received the members' mailgram). In either case, according to the procedures governing internal appeals as provided for by the Teamsters' constitution, the complainants had 15 days from the date the Joint Council's decision was transmitted to them to take their appeal to the General Executive Board. It is clear that the three-month period expired before the complainants' 15 days had run. When the three-month period lapsed, the complainants had done all that they were required to do under the union rules for invoking internal remedies and had failed to meet no deadline under those rules. Consequently, under the Act, they had the right to complain to the Secretary of Labor when the process they invoked had not run its course at the expiration of three calendar months.
 
 
 29
 Local 480 argues that because the complainants filed an appeal with the General Executive Board and could have waited for a decision from that board before filing their complaint with the Secretary, the complainants were obligated to wait for the General Executive Board's decision before going to the Secretary. However, this interpretation of the Act would read out of section 402 the alternative to exhaustion it expressly provides. As indicated by the plain terms of the Act, as well as the Secretary's own regulations interpreting section 402(a), the complaining members are not required to exhaust fully their internal remedies if those remedies have been invoked without satisfaction for a period of three months.[1]
 
 
 30
 Further, the union, and not the complainants, bears responsibility for the passing of the three-month period before all internal procedures could be exhausted. The union waited over one month before addressing the union members' protest, and, more significantly, the Joint Council waited nearly two additional months before issuing a decision on the matter. For the complainants to have appealed the decision before the three-month period had passed, they would have needed to file their appeal within two days of receiving the decision, even though union rules purported to allow them 15 days. It is apparent that if the Joint Council had acted promptly upon the initial protest, there would be no question now as to whether the complainants had given the union an opportunity to remedy their complaints before resorting to the Secretary. The complainants had no responsibility for the time requirements that the union itself had created or for the time consumed by the Joint Council in acting on their protest. See Shultz, 429 F.2d at 597.
 
 
 31
 If a union desires the opportunity to render its ultimate appellate judgment on a member's complaint before he may turn to the Secretary of Labor under subsection (2) of § 402(a), it is the union which must provide an appellate timetable which produces a final judgment within the three calendar month period. It cannot rely upon its own stately procedure for appeal or its own delay in deciding various stages of appeal to destroy the right of a member to resort to the Secretary of Labor under the alternative provision of subsection (2).
 
 
 32
 Id. See also Hodgson v. Liquor Salesmen's Union, Local 2, 334 F.Supp. 1369, 1377 (S.D.N.Y.), aff'd, 444 F.2d 1344 (2d Cir.1971).
 
 
 33
 Although the manifest purpose of section 402(a)(1) and (2) is "to postpone governmental intervention until the union is afforded the opportunity to redress the violation," Wirtz v. Local 153, Glass Bottle Blowers Ass'n, 389 U.S. 463, 472, 88 S.Ct. 643, 649, 19 L.Ed.2d 705 (1968), unions are "expected to provide responsible and responsive procedures for investigating and redressing members' election grievances." Wirtz v. Local 125, Laborers' Int'l Union, 389 U.S. 477, 484, 88 S.Ct. 639, 642, 19 L.Ed.2d 716 (1968). Local 480's failure to provide such responsive procedures does not prevent the conclusion that the violation charged by the Secretary was one "which the union had a fair opportunity to consider and redress in connection with a member's initial complaint." Id.
 
 
 34
 Accordingly, we conclude that the complainants did invoke their available union remedies without obtaining a final decision within three calendar months and therefore were entitled to make their complaint to the Secretary of Labor as provided in section 402(a)(2) of the LMRDA. The district court therefore erred in dismissing the Secretary's complaint without reaching the merits.
 
 III.
 
 35
 Although the district court did not determine whether the complainants' initial protest to the Joint Council met the 72-hour requirement of the Teamsters' constitution, on appeal, Local 480 disputes the complainants' compliance with this requirement, and both parties argue in their briefs to this court the question whether it is the sending of the initial protest or its receipt that governs the issue of timeliness.[2] Because we reverse and remand the case for further disposition, and anticipate that the parties will continue to contest the timeliness of the initial protest, we set forth briefly the law applicable to the determination of this issue.
 
 
 36
 The relevant provision of the Teamsters' constitution does not indicate whether sending or receiving controls. The constitution merely states that the protest "shall be made in writing ... within seventy-two (72) hours."
 
 
 37
 Section 402(a) "was predicated upon the assumption that the Union's remedial procedure would afford a fair opportunity for a reasonable investigation and redress upon the filing of a meritorious complaint." Hodgson, 444 F.2d 1344, 1349 (2d Cir.1971). Given the remedial nature of the LMRDA, any attempt to preclude government intervention by affording union members the opportunity to redress their complaints internally must be predicated upon a process of internal redress that is real, not illusory. A 72-hour time limit is of such brevity as to approach rendering the opportunity for internal redress illusory, and we believe that, where the relevant provision is ambiguous as to whether the sending or the receiving of the protest controls, the circumstances warrant construing the provision as requiring the protest to be sent within 72 hours.[3]
 
 
 38
 This view is consistent with the decisions of other circuits when faced with the same question in roughly analogous circumstances. See Donovan v. Civil Serv. Employees Ass'n, Local 1000, 761 F.2d 870, 874 (2d Cir.1985) (a protest sent within the ten-day period provided by the union's constitution, but not received until 3 days after the ten-day period expired, satisfied the ten-day requirement for purposes of section 402(a)); Donovan v. Local 3122, Communication Workers of America, 740 F.2d 860, 862 (11th Cir.1984) ("Any time requirement that is dependent upon the union's receipt of the protest instead of its postmark becomes immediately suspect in light of current delays in mail transmittals."); see also Hodgson, 444 F.2d at 1349-50 (protest sent within deadline but received late due to postal strike was timely under section 402).
 
 
 39
 The order of the district court is REVERSED and the case REMANDED for further proceedings consistent with this opinion.[4]
 
 
 
 *
 Honorable Eugene E. Siler, Jr., Chief District Judge, United States District Court for the Eastern District of Kentucky, sitting by designation, became a Circuit Judge on September 16, 1991
 
 
 [1]
 The Secretary's regulations read in pertinent part as follows:
 If the member obtains an unfavorable final decision within three calendar months after invoking his available remedies, he must file his complaint within one calendar month after obtaining the decision. If he has not obtained a final decision within three calendar months, he has the option of filing his complaint or of waiting until he has exhausted the available remedies within the organization. In the latter case, if the final decision is ultimately unfavorable, he will have one month in which to file his complaint.
 
 
 [29]
 C.F.R. § 452.135(b). Although the Secretary's regulations are not binding on federal courts, "[w]hen faced with a problem of statutory construction, [federal courts] show[ ] great deference to the interpretation given the statute by the officers or agency charged with its administration." BLE Int'l Reform Comm. v. Sytsma, 802 F.2d 180, 190 (6th Cir.1986) (quoting Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)). We believe the Secretary's interpretation is fully supported by the statutory language, and the union provides no compelling indications that the Secretary's interpretation is wrong
 
 
 [2]
 The parties also raised in the district court, but do not address on appeal, a different but related issue of timeliness. Before the district court, Local 480 disputed the complainants' compliance with the 72-hour requirement by maintaining that, even assuming the time of sending controls, the mailgram was not actually posted until 5:30 p.m. on November 8, more than 72 hours after the end of voting at 5:00 p.m. on November 5. The complainants claimed that Western Union received their mailgram at 3:11 p.m. on November 8. The Secretary argued before the district court that, even if the 5:30 p.m. posting time controls, the complainants met the 72-hour requirement because the election was not over until the tally of ballots was complete at 5:45 p.m. on November 5. The timing of the tally completion and the mailgram posting are not in dispute. Therefore, we agree with the Secretary's contention that the mailgram was sent before the 72-hour period expired
 
 
 [3]
 We cannot help but note that, although the 72-hour deadline for initiating an election protest is ambiguous, Article XIX, Section 2(a), provides that the 15-day period for appealing a Joint Council decision begins to run "from the date the decision is placed in the mail or otherwise transmitted to the interested parties." By maintaining that the Joint Council must receive members' protests within 72 hours, but that the clock for appeals begins to run before members receive a Joint Council decision, Local 480 urges a construction of the Teamsters' constitution that would impose inconsistent requirements toward the consistent end of disfavoring complaining union members
 
 
 [4]
 The district court did not address, and we take no position on, the Joint Council's alternative basis for dismissing the complainants' initial election protest, i.e., the finding that the protestors failed to specify sufficiently the acts complained of and how those acts affected the outcome of the election