### Alexis M. HERMAN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

### LOCAL 305, NATIONAL POSTAL MAIL HANDLERS UNION, LIUNA AFL—CIO, Defendant.

#### No. Civ.A. 3:98CV608.

United States District Court,
E.D. Virginia.
Richmond Division.

April 8, 1999.

---

Joan E. Evans, Assistant United States Attorney, United States Attorney's Office, Richmond, VA, Frank W. Hunger, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC., for plaintiff.

Thamer E. Temple, III, McSweeney, Burton and Crump, Richmond, VA, for defendant.

## MEMORANDUM OPINION

PAYNE, District Judge.

The Secretary of Labor, Alexis M. Herman, (the "Secretary") filed this action against the defendant union (the "Union") challenging the Union's conduct of an election for the office of President. On the basis of a complaint filed by the losing candidate, the Secretary has alleged that the Union violated several sections of the Labor Management Reporting and Disclosure Act ("LMRDA") of 1959, as amended, 29 U.S.C. §§ 401–483.[1] The Secretary asks that the election for the office of President be declared null and void and that the Union be required to conduct a new election for that office under the supervision of the Secretary.

The Union has moved to dismiss this action for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). The premise of the Union's motion is that the member's complaint was not timely filed with the Secretary. The parties are in agreement that, if the member's complaint was not timely filed with the Secretary, the Court lacks subject matter jurisdiction. For the reasons which follow, the Union's motion is GRANTED.

## STATEMENT OF FACTS

On January 17, 1998, the Union held its regularly scheduled election for officers. The certified results of the election were dated January 30, 1998, and they were posted at several locations during the first week of February. Ronald Jones won the election for President by a margin of more than 2–to–1 votes. By letter dated February 16, 1998, Renee Holiday, a Union member in good standing, who finished a distant second to Jones in the balloting, filed a protest of the election with the Union's National President, William Quinn. The National President denied Holiday's protest by letter dated May 13, 1998. Holiday chose not to appeal this decision, but on June 14, 1998, a date one month and one day after her protest was denied, Holiday filed by facsimile with the Secretary a complaint challenging the conduct of the election and seeking review of the results by the Secretary in accordance with the LMRDA.

## THE APPLICABLE STANDARD

A motion under Rule 12(b)(1) is an attack upon the allegations in the complaint intended to establish subject matter jurisdiction. The party asserting jurisdiction, in this case the Secretary, has the burden to demonstrate the existence of subject matter jurisdiction. *Williams v. United States,* 50 F.3d 299, 304 (4th Cir. 1995). "Unlike the procedure in a 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate fact finder, the court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction." *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). Thus, the allegations of jurisdiction in the complaint are not accorded the presumption of correctness which they would otherwise receive under Rule 12(b)(6) *See Virginia v. United States,* 926 F.Supp. 537, 541 (E.D.Va.1995). Moreover, because a Rule 12(b)(1) motion challenges the existence of the Court's subject matter jurisdiction, the Court "may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Virginia,* 926 F.Supp. at 540–41 (citing *Capitol Leasing Co. v. FDIC,* 999 F.2d 188, 191 (7th Cir. 1993)); *Bain,* 697 F.2d at 1219; *Ocean Breeze Festival Park, Inc. v. Reich,* 853 F.Supp. 906, 911 (E.D.Va.1994).

1. The Secretary's complaint challenges the conduct of the elections for the following four union offices: the Union President; State Executive Board Member (Maryland); Administrative Vice President (Baltimore, Maryland); and Administrative Vice President (Washington, D.C.). The challenges to the last three positions are being addressed in separate actions; the only election at issue before this Court is that for the office of President.

■ The parties do not dispute that filing a timely complaint with the Secretary is a jurisdictional prerequisite that must be satisfied before the Secretary may file a complaint under the LMRDA in District Court. *Reich v. Local 399, Int'l Bro. of Elec. Workers,* 3 F.3d 184, 188 (7th Cir. 1993). Failure to satisfy that jurisdictional prerequisite necessitates dismissal. *Hodgson v. United Steelworkers of America,* 459 F.2d 348, 350 (3d Cir.1972); *Reich v. Local 30, Int'l Bro. of Teamsters,* 6 F.3d 978, 982 (3d Cir.1993). The sole issue for decision here is whether the complaint which Holiday sent to the Secretary on June 14, 1998 was timely. If not, the Union's motion must be granted.

## DISCUSSION

### A. The Union's Procedures

Challenges to the conduct of local Union elections must be made, in the first instance, pursuant to the provisions for such challenges found in the Union's constitution. *See* 29 U.S.C. § 411(a)(4); *see also* Def. M. to Dismiss at Exh. A, Art. VI. Article VI, Section 6 of the Union's constitution provides that "[p]rotests regarding the conduct of elections shall be filed with the National President by forwarding a copy of such protests to the National President within fifteen (15) days after the posting of the results of the election." Def. M. to Dismiss at Exh A, Art VI § 6(1). "Decisions of the National President regarding such protests are appealable to the National Executive Board by forwarding a copy thereof to the National Secretary–Treasurer within fifteen (15) days from the receipt of the National President's decision." *Id.* at § 6(2).

The National President's decision was issued by letter dated May 13, 1998. The record does not show when Holiday actually received it, but counsel for the Secretary represents that Holiday received it on May 14, 1998. Trans.Hrg. Feb. 10, 1999 at 21:1–5. Under Article VI, § 6(2), Holiday could have appealed the National President's decision up to and including May 29, 1998, however, she elected not to file an appeal.

### B. The Applicable Statute

The Union's internal procedures for review of election challenges are not the only vehicle by which a union member may challenge the conduct of an election. Under certain circumstances, the LMRDA allows a member of a union to secure review of an election by the Secretary. In relevant part, the LMRDA provides:

**(a) Filing of complaint; presumption of validity in challenged election**

A member of a labor organization—

(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or,

(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

may file a complaint with the Secretary *within one calendar month thereafter* alleging the violation of any provision of Section 481 of this title. . . .

29 U.S.C. § 482(a) (emphasis added). Section 482(a) therefore provides two avenues for placing an election challenge in the hands of the Secretary for review.

■ The member's first option is provided by Section 482(a)(1). Under that provision, the member must have fully exhausted all remedies available under the Union's constitution and bylaws before taking the election challenge to the Secretary. Here, the parties agree that Section 482(a)(1) does not apply to Holiday's complaint because she did not appeal the National President's decision and thus she did not exhaust the remedies available under the Union's constitution and bylaws before invoking the aid of the Secretary. *See* Pl.M.Opp. at 4.

Therefore, Holiday's only recourse to the Secretary was by way of Section 482(a)(2). That section permits review by

the Secretary if the member has invoked the union's internal remedies and has not obtained a final decision from the union within three months after invoking those procedures. Holiday undisputedly first availed herself of the Union's remedial processes on February 16, 1998. Accordingly, the three month "futility" period under Section 482(a)(2) expired on May 16, 1998.

Thus, if by that date, Holiday had not received a final decision from the Union, under Section 482(a)(2), Holiday could have filed a complaint with the Secretary on or before June 16, 1998. Both in her written brief and at oral argument on this motion, the Secretary conceded that the May 13, 1998 decision rendered by the National President was a "final unfavorable" decision.[2] Therefore, by its express terms, Section 482(a)(2) does not apply because Holiday received a final decision within three months of the date on which she invoked the internal Union remedies. Hence, the preconditions for access to the Secretary under Section 482(a)(2) simply never existed on the facts of this case.

## C. The Legislative History

■ This plain-meaning application of Section 482(a)(2) is consistent with the legislative history of the LMRDA which was "primarily designed to correct abuses which ha[d] crept into labor and management" organizations. S.Rep. 86–187 at Part I—Purpose of the Bill (1959); *see also*, 29 U.S.C. § 401(b) (finding that the LMRDA was essential to "afford necessary protection of the rights and interests of employees and the public generally as they relate to the activities of labor organi-

zations ...."). However, Congress was equally concerned with preserving the autonomy of labor unions. To that end, the LMRDA was crafted "within a general philosophy of legislative restraint" taking "great care ... not to undermine union self government." S.Rep. 86–187 at Part II—Background and General Approach of the Bill, ¶¶ 1, 3; *see also Hodgson v. Local Union 6799, United Steelworkers of America*, 403 U.S. 333, 338, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971) (in enacting the LMRDA, Congress was concerned with "the need to remedy abuses in union elections *without departing needlessly from the longstanding congressional policy against unnecessary governmental interference with internal union affairs*.") (emphasis added).

To achieve the first objective, the LMRDA contains many provisions aimed at guaranteeing fair and democratic union elections, including a provision permitting the Secretary to investigate and review claims of union misconduct. However, to realize the second objective, Section 482(a) was structured so that the Secretary's review would not usurp the independence of labor unions. Therefore, review by the Secretary would not be available unless the union member first sought redress of electoral challenges within the union's internal review process. The following legislative history underscores the clear statutory language on that point:

> The foregoing provisions are to be enforced by the Secretary of Labor, upon complaint of any union member, through court action similar to the proceedings to lift improper trusteeships. In filing a

---

**2.** The Secretary's brief in opposition to the Union's motion provides as follows:

> At the time Ms. Holiday filed her complaint, she had not exhausted all of the remedies available under the union's constitution and bylaws. She did, however, obtain a final decision from the National President, which, as a final, unfavorable decision, was appealable pursuant to the union constitution and bylaws. Pl.M.Opp. at 4.

At oral argument the Secretary's counsel had the following to say with respect to the National President's letter of May 13, 1998:

COUNSEL: The important characterization of this letter is that it is a final appealable decision. It is final for purposes of continued appeal.

THE COURT: It is final—it is final unless it's appealed.

COUNSEL: Correct.

Trans. Hrg. at 15:25 – 16:1–2 (Feb. 10, 1999).

complaint, *the member must show that he has pursued any remedies available to him within the union and any parent body in a timely manner.* This rule preserves a maximum amount of independence and self-government by giving every international union the opportunity to correct improper local elections. If the member is denied relief by the union *or can obtain no decision from the union one way or the other* within three months, he may complain to the Secretary. Since time is of the essence, no complaint may be entertained which is filed more than 1 month after *the union has denied a remedy or the 3 month period has expired.* S. Rpt. 86–187 at Part III, Elections ¶ 8. (emphasis added).

Thus, the legislative history of the LMRDA, reveals that, in enacting Section 482(a), Congress balanced the public interest in fair and democratic union elections against the risk of excessive governmental interference in union affairs by determining that before the Secretary may act, the union member must either have exhausted the remedies provided by the union or have invoked those remedies without obtaining a decision on the merits for a period of three months. The express terms of the statute reflect this balance.

Here, when Holiday filed the complaint with the Secretary on June 14, 1998 she had not pursued all remedies available to her in a timely manner because the period to appeal the National President's decision expired on May 29, 1998, fifteen days after the National President's letter was received, and Holiday chose not to appeal that decision. In addition, as of May 13, 1998, Holiday had obtained a decision on the merits of her claim within three months of invoking the Union's review process. Hence, Section 482(a)(2) was not open to her as an avenue to Secretarial review.[3] Indeed, to allow Holiday none-

theless to file a complaint with the Secretary would directly undermine the LMRDA's objective of preserving union autonomy and self-government.

## D. The Secretary's Regulation

Notwithstanding the plain language of the statute which dictates that Section 482(a)(2) relief is not available when a final decision is issued within three months of the date on which the union member invokes available remedies, the Secretary argues that the regulation which implements Section 482(a) provides otherwise. The regulation provides that:

> If the member obtains an unfavorable final decision within three calendar months after invoking his available remedies, he must file his complaint [with the Secretary] within one calendar month after obtaining the decision. If he has not obtained a final decision within three calendar months, he has the option of filing his complaint or waiting until he has exhausted the available remedies with the organization . . . .

29. C.F.R. § 452.135(b).

As the Secretary argues, courts are required to give substantial deference to constructions of a statutory scheme which are adopted by the agency charged with administration of the statute. *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Consequently, courts are obliged to apply the agency's regulation if it is reasonably related to the express terms or purpose of the enabling legislation. *Id.; see also INS v. Federal Lab. Rel. Auth.,* 4 F.3d 268, 271, (4th Cir.1993). However, when the provisions of a statute are unambiguous, the agency charged with its administration has no power to extend or amend the statute by regulation or interpretation. Hence, agency regulations which are inconsistent with legislative enactments must yield to the clear terms of

---

**3.** Holiday invoked the Union's remedial process on February 16, 1998 and the three month futility period thus continued until

May 16, 1998, three days after Holiday had obtained the National President's decision.

the statute. *See e.g., Helvering v. Powers,* 293 U.S. 214, 224, 55 S.Ct. 171, 79 L.Ed. 291 (1934); *INS,* 4 F.3d at 271. Therefore, to the extent that the Secretary's regulation purports to allow a member to proceed under Section 482(a)(2) notwithstanding that the member received a final decision within three months of invoking available remedies, the regulation can be given no effect.

However, the regulation, as applied to the facts here presented, supports the conclusion that Holiday's complaint to the Secretary was untimely. As the Secretary has conceded, the National President's May 13, 1998 decision was a final unfavorable decision. Accordingly, under the first sentence of the regulation, Holiday had one calender month from that date, or until June 13, 1998, to file her complaint with the Secretary. The complaint was filed on June 14, 1998, one day after the filing date required by the regulation. Therefore, the complaint is untimely under the plain language of the Secretary's own regulation.

## E. The Secretary's Theory for Avoiding the Plain Language of Section 482(a)(2)

The Secretary advances two reasons in support of a result different than that which follows from the plain text of the statute, its legislative history and the Secretary's regulation. First, notwithstanding that she expressly concedes that the National President's May 13, 1998 decision was a final decision, the Secretary urges the Court to treat that decision as "nonfinal" because it "could" have been appealed. Alternatively, the Secretary argues that, if the Court treats the National President's decision as final, the one calendar month filing period under 29 C.F.R. § 452.135(b), (which the Court has assumed *arguendo* is valid), runs not from the date of the decision, May 13, 1998, but rather runs from the date that Holiday claims actually to have received the decision, May 14, 1998. For the following reasons, neither contention passes muster.

### 1. The National President's Decision was a Final Decision

Notwithstanding the admissions she has made that the National President's decision was a "final unfavorable decision," the Secretary argues that the National President's decision should be considered "nonfinal" because Holiday had fifteen days in which to appeal that decision to the Union's National Executive Board. The Secretary's position is that where, as here, the three month period expires before the deadline for filing an appeal, the member is not obligated to pursue the appeal but, instead, is entitled to file directly with the Secretary. The unarticulated premise of this argument is that a "final decision" under Section 482(a)(2) means a decision rendered by the forum of last resort in the union's constitution and by-laws, even if the union member has declined to pursue that available avenue of relief. If the Secretary's argument is correct, Holiday was entitled to proceed under Section 482(a)(2) because the union's forum of last resort, having never been asked to do so, had not issued an opinion when the three month finality period expired on May 16, 1998.

The position advanced by the Secretary is inconsistent with traditional concepts of finality. Although the LMRDA does not define the term "final decision," a decision generally is considered final if it ends the particular controversy on the merits and leaves nothing to be done other than the execution of judgment. *See e.g., Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945); *Humphrey v. Prudential Securities, Inc.,* 4 F.3d 313, 314 n. 1 (4th Cir.1993); *Delta Financial Corp. v. Comanduras & Assoc.,* 973 F.2d 301, 304 (4th Cir.1992). And, of course, having a "final" decision generally is a jurisdictional prerequisite before the

attachment of the right of appeal.[4] Here, the National President's decision of May 13, 1998, provided a comprehensive decision on the merits of Holiday's challenge to the union's election. Under conventional concepts of finality, that decision was a "final decision" on the date it was issued. The presence of a potential right of appeal does not mean that such a decision is not final. In any event, Holiday elected not to appeal the National President's decision, thereby tacitly accepting it as final.

The Secretary relies upon *Martin v. Local 480, Int'l Bro. of Teamsters,* 946 F.2d 457 (6th Cir.1991) and *Reich v. Local 399, Int'l Bro. of Elec. Workers,* 3 F.3d 184, (7th Cir.1993) to support her contention that "final decision" under Section 482(a)(2) is a decision rendered by the last potential avenue of appeal provided in a particular union's rules, even if the union member has eschewed recourse to that appellate forum. In addition, the Secretary argues that those decisions teach that, when the three month period after invocation of remedies expires before the deadline for filing an appeal has passed, the union member is relieved of the obligation to comply with the union's internal deadlines or procedures and instead may file a complaint directly with the Secretary under Section 482(a)(2). Neither argument has merit.

In *Local 480,* two unsuccessful candidates for union office timely protested the union's elections on November 8, 1989 thereby initiating a three month futility period that expired on February 8, 1990. *Local 480,* 946 F.2d at 459. On February 6, 1990, the protest was denied and, under the union's constitution, the members had fifteen days (or until February 21, 1990) to appeal the denial "to the General Executive Board for *final decision.*" *Id.* (emphasis added). The members filed an appeal seventeen days later and the appeal

was denied because it was untimely. *Id.* at 460.

In *Local 480,* the Sixth Circuit concluded that the union members were not required to exhaust available internal remedies and instead could file a complaint with the Secretary under Section 482(a)(2) based on the following rationale:

> We believe that, in the case at bar, the union was afforded the opportunity intended by the Act to hear and redress the complaining members' charges, *but it failed to render a final decision within three months after the complainants initially invoked the union's internal grievance procedures.* Consequently, the union member's complaints, filed within one month after the three-month deadline passed, complied with the prerequisites of section [482(a)(2) ].... When the three-month period lapsed, the complainants had done all that they were required to do under the union rules for invoking internal remedies and had failed to meet no deadline under those rules. Consequently, under the Act, they had the right to complain to the Secretary of Labor when the process they invoked had not run its course at the expiration of three calendar months. *Id.* at 461–62.

Thus, in *Local 480,* the untimeliness of the member's appeal did not foreclose proceeding under Section 482(a)(2) because the three month period had expired before a final decision was rendered. To require the union member to exhaust available remedies when the three month period had expired without a final decision "would read out of section [482] the alternative to exhaustion it expressly provides." *Id.* at 462.

*Local 480* is dispositively distinguishable from this action in two respects. First, there the union's own rules defined a "final decision" as one issued by the union's General Executive Board; and, without doubt,

---

**4.** *See* 28 U.S.C. § 1291 (granting jurisdiction to the federal circuit courts to review only the final determinations of district courts or federal agencies); *but see* 28 U.S.C. § 1292 (permitting interlocutory review in limited circumstances).

no such decision had been issued within three months of the date on which the member had invoked the union's review process. Here, although the Union's constitution provides for appellate review, the Union's constitution does not define as final the decision which is issued by the appellate forum. Thus, traditional concepts of finality apply to render the National President's decision final.

Second, in *Local 480,* the Sixth Circuit made clear that its decision was made "without intending to enunciate principles for controlling all future cases that involve the question of exhaustion of remedies." *Id* at 461. In particular, the court noted that "our analysis is fact specific and relies particularly on the fact that the union's initial delay in responding to the protest precipitated the problem we are now asked to resolve." *Id.* Therefore, *Local 480* is properly confined to its unique facts upon which the court inferred that, rather than seeking to resolve the issue, the union there impermissibly had sought to delay its decision on the particular claim. Here, there is no evidence to indicate that the Union took any steps unnecessarily to stall or frustrate the resolution of Holiday's complaint and thus the teaching of *Local 480* does not apply.

The Secretary also draws support for her position from *Reich v. Local 399, Int'l Bro. of Elec. Workers,* 3 F.3d 184, (7th Cir.1993) which itself relies heavily on *Local 480.* In *Local 399,* the members invoked the union's remedial process on May 13, 1991, thereby initiating a three month period which expired on August 13, 1991. *Id.* at 185. On July 26, 1991, the union summarily denied the challenge for failure of the members to comply with unspecified provisions of the union's constitution. *Id.* at 186. The adverse decision did not explain or identify the deficiencies of the complaint; nor did it notify the members that it was necessary to take further steps in order to preserve any right to appeal. *Id.* More than a month after the decision was issued, a complaint was filed with the

Secretary. The district court held that, because the LMRDA was intended to permit unions to remedy as many election disputes as possible without governmental interference, the cryptic denial was sufficient to qualify as a final decision. *Id.* at 188. Then, having determined that a final decision had been received, the district court concluded the complaint to the Secretary, which was filed more than one month thereafter, was untimely and accordingly dismissed the action for lack of subject matter jurisdiction.

The Seventh Circuit reversed, concluding that the district court's narrow view of the circumstances of the case failed to account for "the manifest intent of Congress to balance its preference for internal union dispute resolution machinery with its concern that union members have an expeditious and certain method by which they can be assured that democratic principles will be vindicated in union elections." *Id.* at 189. In order to accord that interest the weight considered appropriate by the Seventh Circuit, the court held that unions were required "to provide responsible and responsive procedures for investigating and redressing members' elections grievances". *Id.* (quoting *Wirtz v. Local Union No. 125, Laborers' Int'l Union,* 389 U.S. 477, 484, 88 S.Ct. 639, 19 L.Ed.2d 716 (1968)). The Seventh Circuit then concluded that the union's procedures failed to satisfy that obligation because they were "unnecessarily complex or otherwise operate[d] to confuse or inhibit union protestors." *Id.* (quoting *Hodgson v. Local Union 6799, United Steelworkers of America,* 403 U.S. 333, 341 n. 6, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971)). In such cases, the court held that procedural deficiencies could not operate to foreclose further internal review or independent remedial review by the Secretary. Importantly, and unlike the facts presented here, in *Local 399* the union's delay in ruling on the complaint had the effect of preventing the complainants from timely seeking other

potential avenues of internal review. *See id.* at 187

As with *Local 480,* the facts in this action are significantly different than those presented in *Local 399.* First, there has been no allegation in this case that the Union's internal review process was needlessly complex or unduly burdensome and therefore *Local 399* is simply inapplicable.[5] Second, unlike *Local 399,* there is no evidence here that the timing of the National President's decision, foreclosed Holiday from pursuing an avenue of internal appellate review.

More fundamentally, it is also important to note that the Seventh Circuit expressly found that the union's cryptic denial was not a final decision and therefore reliance on the more generous filing deadline under Section 482(a)(2) was permissible. *Local 399,* 3 F.3d at 190. Here, Holiday received a final decision and that further distinguishes *Local 399* from this action.

Based on the foregoing, the Court concludes that, on May 13, 1998, the National President issued a final decision on the merits of Holiday's challenge to the election. Under Section 482(a)(2) of the LMRDA and the relevant regulations, Holiday had one calendar month, or until June 13, 1998 to file a complaint with the Secretary. Her complaint was filed on June 14, 1998 and is therefore untimely. Accordingly, the Court lacks subject matter jurisdiction to entertain the action filed by the Secretary.

### 2. The One–Month Filing Period Began to Run on the Date of the National President's Decision— May 13, 1998

■ The Secretary alternatively argues that the one-month filing requirement began to run on May 14, 1998 which is the date on which Holiday claims to have received the National President's letter respecting the challenge. Under this view, the complaint filed with the Secretary on June 14, 1998 would be timely. The Union, however, argues that the time period began to run on May 13, 1998, the date on which the National President's decision denying Holiday's protest was issued. If that is so, the June 14, 1998 complaint was untimely.

The general rule is that the one-month period begins to run on the day the decision was issued, not on the date when the member actually receives it. *See e.g., Local 399,* 3 F.3d at 190 (30 day period on letter decision dated July 26, 1991 ended on August 26, 1991); *Dole v. United Automobile Workers,* 970 F.2d 1562, 1568 (6th Cir.1992) (September 20, 1989 complaint to the Secretary was timely as it was filed within one calendar month of August 24, 1989 letter denying protest); *Reich v. Local 134, Inter. Bro. Electrical Workers,* 1996 WL 210071 (N.D.Ill.1996) (holding that issuing of a letter, rather than actual delivery of letter, is date the limitations period begins to run).[6]

In support of her position that the deadline is calculated from the date an adverse decision is actually received, the Secretary relies on *Usery v. International Organ. of Masters,* 422 F.Supp. 1221 (S.D.N.Y.1976) ("IOM"). However, *IOM* is distinguishable. There, the union met and decided an election protest but did not issue a letter formally announcing that decision until one month later. *Id.* at 1224. The court rejected the union's argument that the one month filing deadline ran from the date on which the union decided the protest, holding instead that it ran from the date of the decision letter because "to decide otherwise would place an undue burden" on

---

5. Indeed, an argument to that effect would ring hollow here because Holiday, a former local union president, had personally navigated the complaint process on numerous occasions. Trans. Hrg. Feb. 10, 1999 at 10:22–25; 11:8–11.

6. The fact that the Union's internal appeal process runs from the date of receipt, *see* Art. VI § 6(a), is irrelevant to the determination of when the time begins to run under Section 482(a)(2).

persons seeking the protection afforded by § 482. *Id.* Contrary to the position the Secretary takes here, *IOM* does not stand for the proposition that the filing deadline runs from the date of actual receipt of an adverse decision. Indeed, *IOM* quite clearly states "the running of the one month period prescribed in 29 U.S.C. § 482 was ... triggered by *the letter* of February 29, 1972, notifying the complainant of the General Executive Board's decision." *Id.* at 1224. (emphasis added).[7]

The weight of existing authority supports the conclusion that the filing deadline under Section 482(a)(2) began to run on May 13, 1998, the date on which the National President's decision was issued. Therefore, Holiday had until June 13, 1998 to file her complaint with the Secretary. Her complaint filed on June 14, 1998 was untimely and therefore this Court is without subject matter jurisdiction to entertain the action filed by the Secretary.

### CONCLUSION

Because Holiday filed her complaint with the Secretary one month and one day after the National President's adverse final decision, the complaint was untimely. Although the result, at first glance, appears quite technical, it is necessitated by the text of the controlling statute and it effectuates the intent of Congress to preserve a union's autonomy over its elections so long as it acts within the time which Congress has determined to be reasonable in such matters. The argument advanced by the Secretary would disturb the balance struck by Congress by encouraging union members to eschew available union remedies, as did Holiday here. Hence, the apparently technical result has substantive significance.

For the foregoing reasons, the Court lacks subject matter jurisdiction over this

7. In addition, unlike *IOM*, there is no evidence that the Union decision here was kept secret. Thus, the concern that animated the decision in *IOM* (the risk that the remedial

action and the defendant's motion to dismiss under Rule 12(b)(1) is GRANTED.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record. The Clerk is directed not to send copies by "electronic or computer means" unless explicitly directed.

It is so ORDERED.

purposes of § 482 would be undermined if unions were permitted to defer making their decisions public) is simply not implicated in this case.