RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0334p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

THOMAS E. PEREZ,

        *Plaintiff-Appellant,*

    v.

POSTAL POLICE OFFICERS ASSOCIATION,

        *Defendant-Appellee.*

No. 12-4390

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:12-cv-00897—James S. Gwin, District Judge.

Argued: October 11, 2013

Decided and Filed: November 27, 2013

Before: MERRITT and CLAY, Circuit Judges; STAFFORD, District Judge.[*]

—————————————

## COUNSEL

**ARGUED:** Robert D. Kamenshine, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Michael T. Anderson, MURPHY ANDERSON PLLC, Washington, D.C., for Appellee. **ON BRIEF:** Robert D. Kamenshine, Michael Jay Singer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Michael T. Anderson, Arlus J. Stephens, MURPHY ANDERSON PLLC, Washington, D.C., for Appellee.

—————————————

## OPINION

—————————————

CLAY, Circuit Judge. Sections 401 and 402 of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 481, 482, regulate union elections and authorize the Secretary of Labor to bring suit to enforce these

———————————————————
[*]The Honorable William H. Stafford, Jr., United States District Judge for the Northern District of Florida, sitting by designation.

1

provisions. Before the Secretary can commence an enforcement action, a member of the union must exhaust—or attempt to exhaust—his internal union remedies, then file an administrative complaint with the Secretary. The complaining member has just one calendar month to file his administrative complaint, measured from the latest of two dates: the date he "exhausted" his internal union remedies, or the date three months after the member invoked his internal union remedies "without obtaining a final decision." 29 U.S.C. § 482(a).

This case turns on how we determine when a member has "exhausted" his internal union remedies. Plaintiff, the Secretary of Labor,[1] contends that a member exhausts the union's remedies when he receives the union's final decision. Defendant, the union representing police officers working for the United States Postal Inspection Service, asserts that the member's one-month limitations period runs from the date the union sends out its final decision. The district court agreed with Defendant and dismissed this case on the grounds that the complaining member had not filed his administrative complaint within the prescribed time period. We disagree, and hold that a member has not "exhausted" his internal union remedies until he receives the union's final decision. We therefore **REVERSE** the district court and **REMAND** this action for further proceedings consistent with this opinion.

## BACKGROUND

### A.    Facts and Procedural History

In the summer of 2011, Defendant held an election to choose six officers, including its President. Scott Murray was the incumbent President, but when the election was held on July 29, 2011, he was ousted in favor of Christopher Vitolo, then the First Vice President. Murray was convinced that the election was tainted, and he raised his protests with Eric Freeman, Defendant's Election Chair, in a letter dated September 12, 2011. Among other things, Murray claimed that Vitolo had gained an unfair advantage by getting access to union members' personal e-mail addresses.

---

[1]Thomas E. Perez has been substituted for Hilda L. Solis pursuant to Fed. R. App. P. 43(c)(2).

Freeman denied Murray's protests in a letter dated October 12, 2011. Murray appealed to Defendant's Executive Board. The Board, in turn, issued a final decision affirming Freeman's rulings on December 9, 2011. The Board sent this decision on to Murray by certified mail on December 9, 2011, and Murray received the decision on December 14, 2011. Murray filed an administrative complaint with the Department of Labor on January 13, 2012.

Section 402(b) of the LMRDA, 29 U.S.C. § 482(b), gives the Secretary of Labor 60 days to investigate an administrative complaint and file a civil action in federal court if he finds probable cause to believe that the LMRDA was violated. Defendant agreed to extend this deadline to April 13, 2012. On that day, Plaintiff filed suit in the U.S. District Court for the Northern District of Ohio alleging two causes of action: first, that Defendant violated the LMRDA by discriminating in the use of its list of members' e-mail addresses; and second, that Defendant improperly used union resources to promote Vitolo's candidacy. Defendant answered the complaint and moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim. The district court granted Defendant's motion. Although the court concluded that it had subject matter jurisdiction over Plaintiff's suit,[2] it held that Murray's administrative complaint had been untimely, meaning that Plaintiff had failed to state a claim. *See Solis v. Postal Police Officers Ass'n*, No. 12-CV-897, 2012 WL 4056074 (N.D. Ohio Sept. 17, 2012). Plaintiff timely appealed.

### B.     The Statutory Scheme

Congress enacted the LMRDA to stem what it saw as "'shocking abuses' in the process by which labor unions govern[ed] themselves and [to] ensure 'internal union democracy.'" *Shelley v. Brock*, 793 F.2d 1368, 1371 (D.C. Cir. 1986) (citations omitted) (quoting S. Rep. No. 86-187, at 5, 6 (1959), *reprinted in* 1959 U.S.C.C.A.N. 2318, 2322). The LMRDA was thus intended "to restore to members of labor unions the right to participate freely in the government of their union." *Sertic v. Cuyahoga, Lake,*

---

[2]Defendant does not contest the district court's jurisdictional holding.

*Geauga & Ashtabula Counties Carpenters Dist. Council of United Bhd. of Carpenters & Joiners of Am.*, 423 F.2d 515, 521 (6th Cir. 1970). "Congress saw the principle of union democracy as one of the most important safeguards against such abuse, and accordingly included in the LMRDA a comprehensive scheme for the regulation of union elections." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 531 (1972). This regulatory scheme is set out in Title IV of the LMRDA, 29 U.S.C. §§ 481–483.

Title IV reflects Congress' "weigh[ing] how best to legislate against revealed abuses in union elections without departing needlessly from its long-standing policy against unnecessary governmental intrusion into internal union affairs." *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 471 (1968). Section 401, 29 U.S.C. § 481, establishes terms of office for union officers and the method of their election. Section 402, 29 U.S.C. § 482, "sets up an exclusive method for protecting Title IV rights, by permitting an individual member to file a complaint with the Secretary of Labor challenging the validity of any election because of violations of Title IV." *Calhoon v. Harvey*, 379 U.S. 134, 140 (1964). "The Secretary of Labor was selected for this task due to the special knowledge and expertise enjoyed by him in regard to union activities." *Donovan v. Westside Local 174, Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 783 F.2d 616, 620 (6th Cir. 1986) (citing *Calhoon*, 379 U.S. at 140). "Because the Secretary acts on behalf of union members in § 402 actions, Congress mandated exhaustion of internal union remedies as a prerequisite to suit in federal court to permit a union to set its own house in order before subjecting it to costly litigation." *Holmes v. Donovan*, 796 F.2d 173, 177 (6th Cir. 1986). This exhaustion "'rule preserves a maximum amount of independence and self-government by giving every international union the opportunity to correct improper local elections'" before government intervention becomes necessary. *Hodgson v. Local Union 6799, United Steelworkers of Am.*, 403 U.S. 333, 339 (1971) (quoting S. Rep. No. 86-187, at 21, *reprinted in* 1959 U.S.C.C.A.N. 2318, 2337).

Sections 402(a)(1) and (a)(2) provide two ways that a union member may satisfy the exhaustion requirement: respectively, either by "exhaust[ing] the remedies available

under the constitution and bylaws of" his union, 29 U.S.C. § 482(a)(1), or "invok[ing] such available remedies without obtaining a final decision within three calendar months after their invocation."  29 U.S.C. § 482(a)(2).  If the member wishes to pursue the matter further, he must file an administrative complaint with the Secretary "within one calendar month" after satisfying the exhaustion requirement.  29 U.S.C. § 482(a).  The Department of Labor has issued self-styled interpretive regulations construing this section.  *See* 38 Fed. Reg. 18,324, 18,324 (July 9, 1973).  The regulation rephrases the exhaustion method of § 402(a)(1), stating that "[i]f the member obtains an unfavorable final decision within three calendar months after invoking his available remedies, he must file his complaint within one calendar month after obtaining the decision."  29 C.F.R. § 452.135(b).  The rule also interprets the limitations period of § 402(a) to run from the later of the two dates of exhaustion.  *See id.*  The legislative history confirms what the text of the exhaustion requirement and limitations period make plain—"time is of the essence" in filing an administrative complaint.  S. Rep. No. 86-187, at 21, *reprinted in* 1959 U.S.C.C.A.N. 2318, 2337.

## DISCUSSION

This appeal presents a single issue—whether a member exhausts his internal union remedies under LMRDA § 402(a)(1) when the union sends its final decision, or when the member receives it.  We review the district court's interpretation of this statute *de novo*.  *See  S.E.C. v. Mohn*, 465 F.3d 647, 650 (6th Cir. 2006).  Our analysis begins with the plain meaning and, if the language is unambiguous, ends there as well.  *See Nat'l Air Traffic Controllers Ass'n v. Sec'y of Dep't of Transp.*, 654 F.3d 654, 657 (6th Cir. 2011).  If the text alone does not admit a single conclusive answer, we can draw on a broader range of interpretive tools.  *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1333–36 (2011).  Those tools include the Secretary of Labor's construction of the statute.  *See id.* at 1335.  The regulation interpreting § 402(a) is not binding on this Court or entitled to *Chevron* deference.  *See Martin v. Local 480, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 946 F.2d 457, 462 n.1 (6th Cir. 1991); *see also United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001).  In

fact, the Secretary does not claim that *Chevron* deference applies. But the rule, along with the Secretary's less formal pronouncements on the statute's meaning, may still have the "power to persuade" us. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also N. Fork Coal Corp. v. Fed. Mine Safety & Health Review Comm'n*, 691 F.3d 735, 742 (6th Cir. 2012).

### A.          "Exhaust" Means "Obtain a Final Decision"

Section 402 establishes two ways that a member can exhaust his internal union remedies and thus begin the one-month limitations period. He can "exhaust[] the remedies available under the constitution and bylaws of" his union, § 402(a)(1), or "invoke[] such available remedies without obtaining a final decision within three calendar months after their invocation," § 402(a)(2). 29 U.S.C. § 482(a). Murray's administrative complaint was untimely under § 402(a)(2) regardless of whether the date-of-mailing or date-of-receipt rule applies. But a member's administrative complaint satisfies § 402(a) if it is timely under either § 402(a)(1) or (a)(2). *See Martin*, 946 F.2d at 462. The question, then, is when Murray "exhausted" his internal union remedies under § 402(a)(1).

The LMRDA does not explicitly define "exhausted" and dictionary definitions simply confirm that a member exhausts his remedies when he reaches the end of the union's procedures. *See* Black's Law Dictionary 654–55 (9th ed. 2009); Oxford English Dictionary (2d ed. 1989), *available at* http://www.oed.com/view/Entry/66155?; Webster's Third New Int'l Dictionary 796 (1993). These broad definitions do not illuminate the narrow question before us. However, our plain meaning analysis does not end there. We discover a statute's plain meaning "by looking at the language and design of the statute as a whole." *Metro. Hosp. v. U.S. Dep't of Health & Human Servs.*, 712 F.3d 248, 259 (6th Cir. 2013) (quotation marks omitted). Thus, we read § 402(a)(1) and (a)(2) together. When a member begins the exhaustion process, the timeliness of any future administrative complaint is governed by § 402(a)(2) alone. But section 402(a)(2) becomes irrelevant if the member "obtain[s] a final decision" within three months. 29 U.S.C. § 482(a)(2). If that happens, the timeliness of the member's administrative

complaint is controlled by § 402(a)(1). In other words, § 402(a)(1) does not apply—and therefore the member has not "exhausted" the union's procedures—until he has "obtain[ed] a final decision."

Interpretive sources beyond the bare text confirm this interpretation. The Department of Labor's interpretive rule construing § 401(a)(1) reads sections (a)(1) and (a)(2) together, so that "[i]f the member *obtains* an unfavorable final decision within three calendar months after invoking his available remedies, he must file his complaint within one calendar month after *obtaining* the decision." 29 C.F.R. § 452.135(b) (emphases added). The Department issued this rule in 1973 based on its experience litigating LMRDA election actions. *See* 38 Fed. Reg. 18,324, 18,324, 18,338 (July 9, 1973). We find the Secretary's interpretation, long held and strongly grounded in the statute's text, persuasive. *See United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 219–20 (2001). Therefore, Murray's one-calendar-month limitations period began to run when he "obtain[ed] a final decision" from Defendant.

### B.  Members "Obtain a Final Decision" When They Receive That Decision

Now that we have identified the key statutory phrase, we can determine what it means. Once again, we start with the plain meaning. When the verb "obtain" is used in its transitive form, it means "to gain or attain possession or disposal of," Webster's Third New Int'l Dictionary 1559 (1993),"[t]o come into the possession of; to procure; to get, acquire, or secure," Oxford English Dictionary (3d ed. 2004), *available at* http://www.oed.com/view/Entry/130002?, or "[t]o succeed in gaining possession of as the result of planning or endeavor; acquire." Am. Heritage Dictionary 1214 (4th ed. 2000). In other words, someone "obtains" a thing when that person has physical control over it. *Cf. Sekhar v. United States*, 133 S. Ct. 2720, 2725 (2013) ("Obtaining property [in violation of the Hobbs Act] requires not only the deprivation but also the acquisition of property. That is, it requires that the victim part with his property, and that the extortionist 'gain possession' of it." (quotation marks and citations omitted)). Indeed, Defendant effectively concedes that a member "obtain[s] a final decision" when he

receives that decision. Because this term has a universally understood meaning, that meaning controls here. *See Doe v. Salvation Army in U.S.*, 685 F.3d 564, 570–71 (6th Cir. 2012); *Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 588–89 (6th Cir. 2002). Therefore, a complaining member does not "obtain[] a final decision"—and thus "exhaust[]" his internal union remedies—until the date he receives the decision.

Other interpretive sources reinforce our conclusion. Congress intended the LMRDA to check the power of union leaders and ensure that rank-and-file members have a meaningful opportunity to participate in union operations.[3] The election provisions contained in Title IV of the LMRDA are a key part of this larger statutory scheme. Title IV also recognizes and respects the preference that unions have the first opportunity to resolve election disputes internally. *See Hodgson*, 403 U.S. at 339. The one-month limitations period of § 402(a) reflects Congress' balancing act. But where time is of the essence and union members have so little of it, the overarching goals of the LMRDA strongly favor giving the member the full benefit of this one-month period. *See Martin*, 946 F.2d at 463–64. The date-of-receipt rule also incentivizes unions to "provide responsible and responsive procedures for investigating and redressing members' election grievances." *Wirtz v. Local Union No. 125, Laborers' Int'l Union of N. Am.*, 389 U.S. 477, 484 (1968). If a member has one month from receiving the union's final decision, it is more likely that the union will take care that the member is quickly and fully apprised of the resolution of his complaint.

Further, the Secretary has consistently advanced the date-of-receipt rule in prior litigation. *See Herman v. Local 305, Nat'l Postal Mail Handlers Union*, 44 F. Supp. 2d 771, 780 (E.D. Va. 1999), *vacated on other grounds*, 214 F.3d 475 (4th Cir. 2000); *Reich v. Local 134, Int'l Bhd. of Elec. Workers*, No. 95 C 6688, 1996 WL 84207, at *3 (N.D. Ill. Feb. 22, 1996). Congress has charged the Secretary with enforcing the provisions of § 401 of the LMRDA and recognizes the Secretary's special knowledge and expertise in this area. *See Calhoon*, 379 U.S. at 140. Although the Secretary's litigation positions

---

[3]Murray may have been Defendant's President, but this fact does not alter Congress' unmistakable intent in enacting the LMRDA. Furthermore, Murray was not Defendant's President when he invoked the union's internal remedies and filed an administrative complaint.

are not entitled to *Chevron* deference, we acknowledge the persuasive power of the Secretary's interpretation of the statute, especially in light of the text and the clear legislative intent.

Defendant cannot weave together a convincing argument in response to the Secretary's position. Defendant claims that we already adopted the date-of-sending rule in *Dole v. United Automobile, Aerospace & Agricultural Implement Workers of America*, 970 F.2d 1562 (6th Cir. 1992), but this is incorrect. The question before us in *Dole* was whether union members had exhausted their internal union remedies at the time an election took place, or two months later after going through an informal dispute-resolution procedure. *See id.* at 1567–68. We held that the members' exhaustion included the informal procedures. *See id.* This conclusion rendered the members' administrative complaints timely under § 402(a)(1) regardless of whether the date of mailing or date of receipt controlled. Therefore, our comment in *Dole* that exhaustion was marked from the date the union president sent his final decision was *dicta* of no binding effect. *See id.* at 1568.

Our decision in *Brock v. International Union of Operating Engineers, Local Union No. 369*, 790 F.2d 508 (6th Cir. 1986), is even more off base. As we acknowledged in *Brock*, "[t]he exhaustion requirement has two aspects: procedure and scope." *Id.* at 509. *Brock* dealt with the permissible scope of the Secretary's complaint in district court in comparison to the member's internal grievances. *See id.* at 512. The case now before us concerns only the procedural aspect of the exhaustion requirement. Furthermore, the date-of-receipt rule does not import a subjective notice requirement into § 402(a). The limitations period runs from the objectively ascertainable date of receipt, not the date the union member opened the envelope or read the decision. Defendant in this case sent its final decision to Murray via certified mail—an excellent example of how a union might act to ensure that the date of its member's receipt is clear and unambiguous.

**CONCLUSION**

Based on the language of the LMRDA, Congress' clear intent in enacting the statute, and the Secretary's persuasive interpretation, we hold that a union member's one-month period to file an administrative complaint under LMRDA § 402(a)(1), 29 U.S.C. § 482(a)(1), does not begin to run until that member receives the union's final decision.  We therefore **REVERSE** the district court and **REMAND** this case for further proceedings consistent with this opinion.[4]

---

[4]Defendant asks us to affirm the district court on the merits if we conclude that the action is timely.  We decline to address this issue in the first instance on appeal.